UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

THE PROPERTY AND CASUALTY     |
INITIATIVE, LLC,     |
         Plaintiff,     |
    |
      v.     |          C.A. No. 05-10520-RCL
    |
UNITED STATES OF AMERICA acting through     |
the NATIONAL CREDIT UNION     |
ADMINISTRATION,     |
         Defendant.     |
_____ |


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6).**

**Introduction**

On September 6, 2005, the plaintiff, The Property and Casualty Initiative, LLC

("Plaintiff" or "PCI"),  filed an Amended Verified Complaint against the defendant, United

States of America, acting through the National Credit Union Administration ("NCUA"),

(collectively, "United States"). In its Amended Complaint, PCI alleges conversion (Count I),

constitutional violations under 42 U.S.C. § 1983 and the Fifth Amendment of the United States

Constitution (Count II), failure to pay on deposit insurance (Count III), negligence (Count IV),

breach of fiduciary duty (Count V), and negligent misrepresentation (Count VI).  PCI alleges

that the United States, acting through the NCUA, failed and refused to release to PCI certain

funds on deposit while serving as conservator of the D. Edward Wells Federal Credit Union

("Credit Union"), which had agreed, pursuant to alleged pledge agreements, to pay over to PCI

any funds on deposit in specified deposit accounts.

**Standard of Review**

For the purposes of a motion to dismiss, the Court accepts as true the facts alleged in the complaint. Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 680 (1st Cir. 1999).[1] However, even accepting as true PCI's allegations of fact, this Court must dismiss the Amended Verified Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), for the following six reasons: First, the court lacks subject matter jurisdiction over PCI's tort claims because PCI failed to file an administrative claim, which is a jurisdictional to suit. Second, the court lacks subject matter jurisdiction over PCI's misrepresentation, breach of fiduciary duty, and failure to pay on deposit insurance claims because those claims are exempted from FTCA purview pursuant to 28 U.S.C. § 2680(h). Third, to the extent PCI is asserting a straight contract theory of recovery, the United States Court of Federal Claims maintains exclusive jurisdiction over any claim upon an express or implied contract with the United States or its agencies pursuant to the Contract Dispute Act of 1978. Fourth, PCI's claims are barred by 12 U.S.C. §§ 1787(b)(9)(A) and 1788(a)(3) of the NCUA's Governing Statute. Fifth, independently of the NCUA's governing statute, PCI's claims are barred by the common law D'Oench doctrine. Sixth, PCI fails to state a viable constitutional claim against the United States.

---

[1]    The Court, however, has no obligation to credit a plaintiff's allegations if they are mere "bald assertions, unsupportable conclusions and opprobrious epithets woven into the fabric of the complaint." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003) (internal citations omitted); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990) ("Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions or outright vituperations").

**Facts**

For the purposes only of Defendant's Motion to Dismiss and this accompanying

Memorandum of Law, the United States accepts the following allegations as true:

1.    The NCUA was appointed conservator of the Credit Union in February 2003.

2.    On or about May 17, 2003, the NCUA liquidated the Credit Union.

3.    On March 21, May 5, and May 22, 2003, PCI sent correspondence to various individuals

      in which it requested, among other things, payment of all amounts on deposit in certain

      deposit accounts.

4.    As of the date of this filing, PCI has never filed an administrative claim under the Federal

      Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-2680.[2]

**Argument**

I.    **THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PCI's TORT AND CONTRACT CLAIMS.**

This Court, respectfully, lacks jurisdiction over PCI's tort and contract claims because

PCI failed to exhaust its administrative remedies under the FTCA by not filing an administrative

claim, and the FTCA expressly exempts claims based on misrepresentation and contract.

---

[2]    The United States attaches as proof of this fact **Exhibit 1**, the Declaration of Allan Meltzer. The United States attaches this exhibit to aid in the Court's determination of subject matter jurisdiction, pursuant to Defendant's Rule 12(b)(1) motion. The attachment of this additional material does not transform this motion from a Rule 12 motion to dismiss to a Rule 56 motion for summary judgment. See Gonzalez v. United States, et al., 284 F.3d 281, 287 (1st Cir. 2002). "[I]t is clear that the facts relevant to the determination of subject matter jurisdiction do not go directly to the merits of the plaintiffs' claim." Id.; see also, Heinrich v. Sweet, 44 F.Supp.2d 408, 412 (D.Mass. 1999), citing Jones-Booker v. United States, 16 F. Supp. 2d 52, 58 (D.Mass. 1998) ("[A] court ordinarily may not consider materials outside the pleadings on a Rule 12(b)(6) motion . . . but may consider such evidence on a Rule 12(b)(1) motion . . . .").

Additionally, to the extent that PCI is asserting a straight contract theory of recovery with

respect to its failure to pay on deposit insurance and breach of fiduciary duty claims, the United

States Court of Federal Claims maintains exclusive jurisdiction over any claim upon an  express

or implied contract with the United States pursuant to the Contract Dispute Act of 1978.  See 41

USC § 609(a)(1); Spodek v. USPS, 35 F. Supp.2d 160, 166-7 (D.Mass. 1999).

> **A.      This Court Lacks Jurisdiction Over PCI's Tort Claims Because PCI Failed To File An Administrative Claim.**

PCI's tort claims, which include claims for conversion (Count I), negligence (Count IV),

negligent misrepresentation (Count VI), and two contractual tort claims –failure to pay on

deposit insurance (Count III) and breach of fiduciary duty (Count V)–must be dismissed for

failure to file an administrative claim,[3] which is a jurisdictional prerequisite to suit under the

FTCA.  See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Coska v. United

States, 114 F.3d 319, 323 n. 8 (1st Cir. 1997).  The FTCA waives the immunity of the United

States from suit, and its statute of limitations is a condition of that waiver.  Muñiz-Rivera v.

United States, 326 F.3d 8, 12 (1st Cir. 2003); United States v. Kubrick, 444 U.S. 111, 117

(1979).  Section 2401(b) of the FTCA provides, in pertinent part, "A tort claim against the

United States shall be forever barred unless it is presented in writing to the appropriate Federal

agency within two years after such claim accrues . . . ."  28 U.S.C. § 2401(b); see also 28 U.S.C.

---

[3]       Notably, PCI merely alleges, without more, that it "satisfied its obligation to file an administrative claim with the NCUA within the time required under 28 U.S.C. § 2401(b)." Amended Complaint, ¶ 24.  PCI does not further identify or describe the alleged administrative claim, or the date of the alleged timely filing; nor does PCI attach the alleged document as an exhibit to the Amended Complaint, as it did with so many other documents.  See, e.g., Amended Complaint at Exhibits D, E, and F.   The FTCA requires "presentation in writing and to the appropriate agency"of an administrative claim.  28 U.S.C. § 2401(b); see also  28 U.S.C. § 2675(a).  Additionally, the amount of the claim must be specified in a sum certain. Id.

§ 2675(a).  Compliance with § 2401(b) is a jurisdictional prerequisite to suit.  See Gonzalez, 284

F.3d at 288; Coska, 114 F.3d at 323 n. 8.  If the FTCA's two-year requirement for presentation

of administrative claims is not met, the "suit will be time barred."  Id. ("This is a matter of

subject matter jurisdiction.  A federal court has no jurisdiction to entertain a suit against the

United States unless a claimant has presented, in writing, a claim stating a sum certain").

In the instant case, a thorough review of NCUA's records revealed that PCI has never

filed an administrative claim.  See **Exhibit 1**, ¶ 2 ("I have reviewed NCUA's records and have

determined that NCUA has no record of any tort administrative claim filed by [PCI]").

Moreover, as more than two years have passed since PCI's alleged claims accrued, PCI is now

forever time-barred from filing an administrative claim.  See 28 U.S.C. § 2401(b); See Gonzalez,

284 F.3d at 288.  Accordingly, as PCI failed to exhaust its administrative remedies, this Court

has no subject matter jurisdiction over PCI's FTCA claims and Counts I, III, IV, V, and VI must

be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B.    PCI's Negligent Misrepresentation, Breach Of Fiduciary Duty, And Failure To Pay On Deposit Insurance Claims Must Be Dismissed As They Are Exempt From FTCA Purview Pursuant to 28 U.S.C. § 2680(h).**

The FTCA expressly withholds its waiver of sovereign immunity from interference with

present and future contractual rights.  28 U.S.C. § 2680(h).  This exemption also encompasses

libel, slander, misrepresentation and deceit.  Id.

The crux of PCI's allegations against the United States is that the NCUA interfered with

PCI's alleged rights under the pledge agreements by failing and refusing to release funds on

deposit that were the subject of the agreements.  This amounts to nothing more than a claim for

'interference with PCI's contractual rights' disguised as something else, *to wit*, claims for failure

to pay on deposit insurance (Count II) and a breach of fiduciary duty (Count V).   Such

allegations fall squarely within the ambit of the FTCA's exceptions and must be dismissed.  29

U.S.C. § 2680(h); Segarra Ocasio v. Banco Regional De Bayamon, 581 F. Supp. 1255, 1258

(D.P.R. 1984) (specifically holding that the FTCA's exception for interference with contract

rights extends to unlawful interference with prospective contractual relations as well as existing

contracts).  Moreover, PCI's negligent misrepresentation claim is expressly exempted from

coverage under the FTCA.  See 28 U.S.C. § 2680(h).

As PCI's negligent misrepresentation, breach of fiduciary duty, and failure to pay on

deposit insurance claims fall within the scope of the FTCA exemption, "the instant action is

outside the ambit of federal subject matter jurisdiction."  Muñiz-Rivera, 326 F.3d at 12.

Accordingly, Counts III, V, and VI of the Amended Complaint must be dismissed.[4]

**II.    PCI's CLAIMS ARE BARRED BY SECTIONS 1787(b)(9)(A) AND 1788(a)(3) OF THE NCUA's GOVERNING STATUTE AND BY THE COMMON LAW D'OENCH DOCTRINE.**

**A.    PCI's Claims Are Barred By Sections 1787(b)(9)(A) And 1788(a)(3) Of The NCUA's Governing Statute.**

The NCUA and other federal agencies which regulate financial institutions play a special

role as regulators of the banking system.  They provide deposit insurance, perform bank

examinations, and where, as here, a bank is failing, serve as conservator, receiver, or liquidating

agent of the bank.  See, e.g., FDIC v. P.L.M. Int'l, Inc., 834 F.2d 248, 254 (1st Cir. 1987); FDIC

---

[4]    Moreover, to the extent that PCI would assert a straight contract theory of recovery (as opposed to one in tort or contractual tort) with respect to its failure to pay on deposit insurance and breach of fiduciary duty claims, the United States Court of Federal Claims maintains **exclusive jurisdiction** over any claim upon an  express or implied contract with the United States or its agencies pursuant to the Contract Dispute Act of 1978.  See 41 U.S.C. § 609(a)(1); Spodek v. USPS, 35 F. Supp.2d 160, 166-7 (D.Mass. 1999).

v. de Jesus Velez., 678 F.2d 371, 374 (1ˢᵗ Cir. 1982); Gunter v. Hutcheson, 674 F.2d 862, 865-66 (11ᵗʰ Cir. 1982), cert. denied, 459 U.S. 826 (1982).

Because of this special role played by the NCUA and the other regulatory agencies, these agencies are protected by powerful statutory and common law defenses when they take control of a financial institution like the Credit Union.  These defenses are intended to permit the NCUA to act expeditiously in reliance on its understanding of the Credit Union's assets and liabilities, **as reflected in the official records of the Credit Union**.  These defenses permit the NCUA to rely on the official records by prohibiting claimants such as PCI from enforcing against the NCUA any alleged agreements which are not properly documented and recorded.

Specifically, PCI's claims are barred by §§ 1787(b)(9)(A) and 1788(a)(3) of the NCUA's governing statute, 12 U.S.C. § 1751, et seq.  Section 1787(b)(9)(A) precludes any agreement which has not been approved by the board of directors of the Credit Union (with such approval reflected in the minutes of the board) from forming the basis of a claim against the NCUA as liquidator:

> Except as provided in subparagraph (B), any agreement which does not meet the requirements set forth in section 1788(a)(3) of this title shall not form the basis of, or substantially comprise, a claim against the liquidating agent or the Board.

12 U.S.C. 1787(b)(9)(A).  Section 1788(a)(3) provides as follows:

> No agreement which tends to diminish or defeat the right, title, or interest of the Board in any asset acquired by it under this subsection, either as security for a loan or by purchase, shall be valid against the Board unless such agreement –
>
> (A)    shall be in writing;
>
> (B)    shall have been executed by the credit union and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the credit union;

(C)    shall have been <u>approved</u> <u>by</u> <u>the</u> <u>board</u> <u>of</u> <u>directors</u> <u>of</u> <u>the</u> <u>credit</u> <u>union,</u> <u>which</u> <u>approval</u> <u>shall</u> <u>be</u> <u>reflected</u> <u>int</u> <u>he</u> <u>minutes</u> <u>of</u> <u>such</u> <u>board</u>, and

(D)    shall have been, continuously, from the time of its execution, <u>an</u> <u>official</u> <u>record</u> <u>of</u> <u>the</u> <u>credit</u> <u>union</u>.

12 U.S.C.A. § 1788(a)(3) (West 1989)(emphasis supplied).

There is no question that enforcement of the alleged pledge agreements would diminish or defeat the NCUA's interest in the assets acquired by it when the Credit Union was ordered into conservatorship.  Pursuant to section 1787(b)(2)(A), the NCUA acquired all of the Credit Union's assets when it went into conservatorship.  That section provides, in relevant part, that "The Board shall, as conservator or liquidating agent, and by operation of law, succeed to –(i) all rights, titles, powers, and privileges of the credit union . . ."  Thus, the NCUA has succeeded to all title and interest in the Credit Union's assets. The NCUA's interest in those assets would clearly be diminished or defeated to the extent that it would be obligated to satisfy a judgment for PCI out of those assets.

The minutes of the Credit Union board of directors do not reflect approval of the pledge agreements by the board of directors, as required by 12 U.S.C. § 1788(a)(3)(C).  Nor have the pledge agreements been "continuously, from the time of [their] execution, an official record of the Credit Union," as required by 12 U.S.C. § 1788(a)(3)(D).  Absent such official record or approval, reflected in the minutes, PCI's claims must be dismissed.

**B.    Independently Of The NCUA's Governing Statute, PCI's Claims Are Barred By The Common Law <u>D'Oench</u> Doctrine.**

Independently of the provisions in its governing statute, the NCUA is protected under federal common law against liability under unrecorded side agreements.  In fact, the defenses

available to the NCUA and other regulatory agencies were first recognized at common law in the

seminal case of D'Oench Duhme & Co. v. FDIC, 315 U.S. 447 (1942).  The Supreme Court held

in D'Oench that the FDIC has an absolute defense which prohibits the enforcement against the

FDIC of "side agreements" which might have any tendency to deceive regulators.  D'Oench,

315 U.S. at 459-60.   The defenses available to agencies as a result of the D'Oench doctrine were

later incorporated, in part, into many of the agencies' governing statutes, such as the National

Credit Union Act, at 12 U.S.C. §§ 1787(b)(9)(A) and 1788(a)(3), and the Federal Deposit

Insurance Act, at 12 U.S.C. §§ 1821(d)(9) and 1823(e).  However, the scope of the defenses

available under D'Oench exceeds the boundaries of these statutes and continues to be further

defined at common law.  See, e.g., Langley v. FDIC, 484 U.S. 86 (1987), 108 S.Ct. 396,

98 L.Ed.2d 340 (1987).[5]

The D'Oench doctrine **applies even if the federal agency had actual notice of the**

**alleged side agreements when it took over the institution**.  Savoy, 788 F.Supp. at 73, citing

Langley, 108 S.Ct. at 401-02 (emphasis added).  In addition, the NCUA may use the doctrine

"both as a shield to protect itself from the claims of a borrower and as a sword to estop the

borrower from denying liability on a note."  Savoy, 788 F.Supp. at 73, citing Timberland Design,

---

[5]        See, also, Savoy v. White, 788 F.Supp. 69, 72-73 (D.Mass. 1992) ("The D'Oench
doctrine has been used whether the banking agency is the FDIC, see, e.g., D'Oench, supra, the
Federal Savings and Loan Insurance Corporation, see, e.g., Federal Sav. & Loan Ins. Corp. v.
Murray, 853 F.2d 1251 (5th Cir. 1988), the Resolution Trust Corporation, see, e.g., Resolution
Trust Corp. v. Clark, 741 F.Supp. 896 (S.D.Fla. 1990), or the NCUA, see, e.g., National Credit
Union Admin. Bd. v. First Nat. Bank, 690 F.Supp. 1580 (N.D.Ill. 1988).  The doctrine has been
used when the federal agency is acting in its corporate capacity, see, e.g., D'Oench, supra, when
acting as conservator of a failing institution, see, e.g.,  Resolution Trust Corp. v. Clark, supra, or
when acting as a receiver of a failed institution, see, e.g., Federal Sav. & Loan Ins. Corp. v. Two
Rivers Associates, 880 F.2d 1267 (11th Cir. 1989)").

Inc. v. First Service Bank for Sav., 932 F.2d 46 (1ˢᵗ Cir. 1991).

As the D'Oench doctrine is fully applicable to regulatory agencies, such as the NCUA,

when acting as conservator, PCI is prohibited, as a matter of law, from enforcing any of the

pledge agreements allegedly made by the Credit Union against the NCUA as conservator of the

Credit Union.  Accordingly, PCI's Amended Complaint must be dismissed.

**III.    PCI FAILS TO STATE A VIABLE CONSTITUTIONAL CLAIM.**

In Count II of its Amended Complaint, PCI asserts a "constitutional claim" with mere

passing reference, without more, to violations under the {sic} "5ᵗʰ Amendment of the United

States Constitution" and "42 U.S.C. § 1983."   Amended Complaint, ¶¶ 26-27.  In support of this

count, PCI alleges only that "the NCUA, and the individuals at the NCUA who took such action"

deprived PCI of its "funds unjustifiably," which, PCI alleges, constitutes a "taking of private

property without just compensation."  Id.  However, PCI has failed to demonstrate a property

interest that gives rise to due process protections.

The interests protected by due process are not infinite.  Board of Regents for State

Colleges v. Roth, 408 U.S. 564, 570 (1972). Gravity and importance of a particular issue to a

plaintiff are not the deciding factors used in determining interests afforded the protections of due

process. See Board of Regents for State Colleges, 408 U.S. 570.  Rather, the "nature" of the

interest is dispositive in assessing its entitlement to protection. For an interest to fall under the

Constitution's due process protections it must qualify as a "property" or "liberty" interest. Id at

571.  Without a recognizable property interest, PCI  cannot successfully assert a due process

violation.  See Booher v. United States Postal Service, et al., 843 F.2d 943, 944 (6th Cir. 1988).

PCI has failed to demonstrate that it possesses the type of property interest that would entitle it to

due process protections.

A property interest exists when more than an abstract need or desire is present.  Property

interests consist of more than unilateral expectations and require legitimate claims of

entitlement.  Board of Regents for State Colleges, 408 U.S. 570   In this case, PCI cannot meet

this burden.  Indeed, PCI is unable to demonstrate a legitimate claim of entitlement to the funds

on deposit at the Credit Union in light of the clear statutory and common law authority in favor

of the United States, acting through the NCUA.

Further, PCI may not assert a claim against the United States simply by couching its

Amended Complaint in the language of "property interest."  PCI merely asserts violations under

general theories of liability without showing that it has an actual cause of action against the

United States.  Indeed, no action can lie against the United States, its agencies, or its officials

acting in an official capacity unless Congress has authorized suit.  See Eveland v. CIA, 843 F.2d

46, 49 (1st Cir. 1988); Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989).

PCI  cannot show that Congress has authorized a suit against the United States for its "property

interest" claim.  Dismissing PCI's Amended Complaint is therefore appropriate.

### Conclusion

For the reasons stated herein, the United States, acting through the NCUA, respectfully

requests that the Court grant its motion to dismiss in its entirety for lack of subject matter

jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Fed. R.

Civ. P. 12(b)(1) and (6).

Respectfully submitted,

UNITED STATES OF AMERICA,
By its attorney,

MICHAEL J. SULLIVAN
United States Attorney

Dated:        September 21, 2005                   /s/Gina Walcott-Torres
                                         By:    Gina Walcott-Torres
                                                Assistant U.S. Attorney
                                                John Joseph Moakley U.S.   Courthouse
                                                1 Courthouse Way, Suite 9200
                                                Boston, MA 02210
                                                (617) 748-3369


## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel certifies that she conferred with counsel for the plaintiff during a conference call concerning the relief sought by this motion.

/s/Gina Walcott-Torres
Gina Walcott-Torres
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

|  |  |  |
|---|---|---|
| THE PROPERTY AND CASUALTY INITIATIVE, LLC, | ) ) ) | C.A. No.: 05-10520-RCL |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, acting through the National Credit Union Administration, | ) ) ) ) |  |
| Defendant. | ) |  |
|  | ) |  |

---

**DECLARATION OF ALLAN MELTZER**
**PURSUANT TO 28 U.S.C. §1746**

I, ALLAN MELTZER, do hereby declare as follows:

1.  I am the Associate General Counsel of the National Credit Union Administration ("NCUA") with responsibility for review of claims filed against NCUA pursuant to the Federal Tort Claims Act, as amended, 28 U.S.C. §2671-2680.  My Division is responsible for reviewing tort claims filed against NCUA and making a recommendation to the NCUA General Counsel regarding such claims. 12 C.F.R. §793.5.

2.  I am familiar with the referenced action styled The Property and Casualty Initiative, LLC, v. United States of America acting through the National Credit Union Administration, C.A. No.: 05-10520-RCL.  I have reviewed NCUA's records and have determined that NCUA has no record of any tort administrative claim filed by the Property and Casualty Initiative.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of September 2005.

/s/ Allan Meltzer
ALLAN MELTZER
Associate General Counsel
National Credit Union Administration