UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE PROPERTY AND CASUALTY )<br>INITIATIVE, LLC, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>UNITED STATES OF AMERICA )<br>acting through the NATIONAL CREDIT )<br>UNION ADMINISTRATION, )<br>    Defendant ) | DOCKET NO. 05-10520-RCL |

**JOINT STATEMENT**

The Plaintiff, The Property and Casualty Initiative, LLC ("PCI") and the Defendant, United States of America acting through the National Credit Union Administration ("NCUA"), hereby submit the following Joint Statement:

**1. Summary of the parties' positions**

**a. PCI**

PCI claims that the NCUA, while acting as Conservator for the D. Edward Wells Federal Credit Union (the "Credit Union") failed to abide by its common law duties to PCI and ignored its enabling statute which provides most pertinently that the NCUA, "as conservator or liquidating agent, shall pay all valid obligations of the credit union in accordance with the prescriptions and limitations of this chapter." 12 U.S.C. sec. 1787(b)(2)(F).

In 2000 PCI agreed to loan up to $2mm to the Community Focus Loan Fund and the Friends of the Credit Union (the "Borrowers"). This loan was intended to permit the

Borrowers to then make and administer smaller loans to individuals and companies in the Springfield area.

The loan documents provided that as collateral for PCI's loan, PCI would have pledged to it the accounts in which loan proceeds would be held at the Credit Union, as well as in the loan documents for the loans made by the Borrowers out of PCI's loan funds. As part of the loan documentation two Pledge Agreements were executed with regard to the accounts in which loan proceeds would be held. The Credit Union was a signatory to these Pledge Agreements, agreeing that they were the collateral of and could be withdrawn by PCI.

PCI advanced $1mm of the loan proceeds and these proceeds were deposited into the pledged accounts. The Borrowers then made a few loan out of these proceeds as contemplated.

On February 21, 2003 the Credit Union was placed into an NCUA conservatorship. Under the NCUA statute (12 USC, Sec. 1787) as well as under the NCUA's press releases about the conservatorship, the NCUA was to honor its obligations.  On March 21, 2003, the Borrowers, at PCI's direction, sought to withdraw the funds contained in the pledged accounts to move them to another bank. The NCUA did not permit this withdrawal for unexplained reasons. At the time of the Borrowers' withdrawal request they were given printouts as to the balances in the two pledged accounts totaling some $630,000. Later that day, as a secured party, PCI itself in writing sought to withdraw the funds from the pledged accounts, in accordance with its rights under the Pledge Agreements.  Again the NCUA did not release the funds, but gave assurances they would be released in the future. Thereafter, PCI and the NCUA had

2

various oral communications wherein PCI pressed for the funds. All of which were to no avail. On May 5, 2003, PCI sent another written request for the funds. Again the NCUA did not allow this to occur.

On May 17, 2003, the NCUA placed the Credit Union into Liquidation. At that point the NCUA took the position that now its maximum obligation under the accounts was limited to the $100k insured amount.

PCI has now brought suit against the NCUA due to its failure to release the funds contained in the pledged accounts during the two months before the liquidation, during which PCI repeatedly sought to obtain them. PCI has asserted claims for conversion, a taking without compensation, negligence, breach of fiduciary duty, and failure to even pay the insured $100k absent receiving a full release of all claims in return.

   b.  **The NCUA**

Defendant contends that Plaintiff has failed to comply with the administrative prerequisites to filing suit under the Federal Tort Claims Act ("FTCA"), to wit, presentation of an FTCA administrative claim to the appropriate agency.   Any and all previous notices by Plaintiff were directed to the NCUA as either the Conservator or Liquidating Agent, and not to the NCUA as an agency of the United States.  Indeed, any discussions that NCUA employees had with Plaintiff regarding alleged claims were by NCUA employees acting in their capacity as agents for either the Conservator or Liquidating Agent.   When the NCUA acts in its capacity as a federal agency (in the FDIC context this is referred to as acting in its corporate capacity), the process for asserting a tort claim is the same as for other federal government agencies (i.e.,

presentation of an SF95 or FTCA administrative claim), and quite different from the process under 12 U.S.C. § 1787.

In fact, an entirely separate section of the NCUA's regulations addresses how to file a claim, consideration of the filed claim, and the agency's settlement authority. Also significant, beyond the question of whether a claim was filed with the proper party, is the fundamental question of whether the NCUA, as an agency, may be liable for actions taken when acting in its capacity as a Liquidating Agent or Conservator.

Defendant also contends that Plaintiff is not situated in the same way an individual would be if seeking funds from an account in his or her name in a failed institution. The accounts are not, and never have been, titled in Plaintiff's name. Thus, Plaintiff cannot now circumvent the fact that any rights it believes it has to those funds arises not, as Plaintiff implies, because it is just another shareholder trying to receive the funds in its account, but because of a pledge agreement that Plaintiff is seeking to enforce. An agreement that plainly does not meet the requirements of 12 U.S.C. §1788(a)(3), which lays out how something must be recorded in order to be enforceable against the NCUA. This section must be read together with 12 U.S.C. 1787(b) (9), which expressly addresses the powers of a Liquidating Agent and Conservator, and specifies the scope of the NCUA's ability to assert the D'Oench defense. That section states that an agreement (which is certainly what the pledge documents purport to be) that does not meet the requirements set forth in 208 (a) (3) cannot form the basis of a claim against the NCUA, in the same way that an agreement cannot form the basis of a claim if the recording requirements of 12 U.S.C. 1787(b)(9).

4

2. **Joint Discovery Plan**

    a. NCUA to file its Answer to the Complaint prior to the Scheduling Conference.

    b. Initial disclosures under Fed. R. Civ. P. 26(a)(1) to be made by May 2, 2006.

    c. All written discovery, excluding requests for admission, shall be served on or before June 30, 2006. No party may conduct any discovery until it has made its initial disclosures.

    d. All depositions shall be conducted on or before November 30, 2006.

    e. PCI shall disclose expert testimony under Fed. R. Civ. P. 26(a)(2) by December 29, 2006. NCUA shall disclose expert testimony under Fed. R. Civ. P. 26(a)(2) by January 15, 2007.

    f. Requests for admission shall be served by January 15, 2007.

3. **Proposed Schedule for the Filing of Motions**

    a. Amended pleadings to be served by April 28, 2006.

    b. Motions for Summary Judgment shall be filed on or before January 15, 2007.

    c. Pretrial Disclosures to be made within the times set forth in Fed. R. Civ. P. 26(a)(3).

    d. The parties request that trial be scheduled approximately twelve months after the initial scheduling conference.

4. **Alternative Dispute Resolution and Trial by Magistrate Judge**

    The parties agree to engage in mediation through the alternative dispute resolution program administered by the United States District Court for the District of

Massachusetts, or through any other mediator agreed upon by the parties.  The parties do not, at this time, consent to trial before a Magistrate Judge.

**Certifications**

The parties and their counsel will file separate certifications in accordance with Local Rule 16.1(D)(3).

| | |
|---|---|
| THE PROPERTY AND CASUALTY INITIATIVE, LLC<br>By its attorneys, | UNITED STATES OF AMERICA,<br>By its attorneys,<br>MICHAEL J. SULLIVAN,<br>United States Attorney |
| /s/ Richard E. Gentilli<br>Richard E. Gentilli (BBO # 189080)<br>Frank F. McGinn (BBO # 564729)<br>Bartlett Hackett Feinberg P.C.<br>155 Federal Street, 9th Floor<br>Boston, MA 02110<br>617/422-0200 | By:  /s/ Rayford A. Farquhar<br>Rayford A. Farquhar,<br>Assistant U.S. Attorney<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>(617) 748-3100 |